Mr. Chief Justice Sharkey
delivered the opinion of the court.
A motion is made to dismiss the writ of error in this case, because it was issued by the clerk without authority of law.
A decree was made by the chancellor, from which an appeal was prayed in term time, but it was not perfected. Where appeals are prayed in term time, a bond executed afterwards will not do, unless, perhaps, in a case where time has been given by the chancellor; but even in such cases, if the appeal be good at all, the chancellor should approve the surety. The bond constitutes a substantive part of the appeal, and must be given as the law directs. It is very clear that this appeal was not perfected; on the contrary, it was abandoned.
A part of the defendants sued out a writ of error, and the record was thereupon brought to this court. Afterwards, all of the parties sued out a second writ of error, but filed no other record than that which had been first filed. Very clearly, the court would dismiss one of these writs, but that is not the *309 material question. It is insisted that this is an interlocutory decree; and if so, the question arises, Has the clerk of the chancery court the power to grant a writ of error where the decree is only interlocutory?
We must notice the earlier provisions of the law in relation to the removal of causes from the inferior to the appellate'court, and the several alterations which have been made up to this time. By the circuit court law of 1822, writs of error were not gran table until after final judgment, and then only by the order of a judge upon inspection of the record, and no appeal could be taken from that court, unless prayed for and allowed in term time. Rev. Code, 139. By the chancery court law, appeals from the final decrees of that court might be taken in one of three ways: first, by praying the appeal and giving bond in term time; second, by filing a copy of the record, and a petition signed by counsel, with the clerk of the supreme court, within one month after the decree; and third, by a petition allowed by a judge of the supreme court within three years. These provisions extended only to final decrees, and it was thought necessary to make a special provision for appeals from interlocutory decrees, which was done in the succeeding section of the law, which authorized an appeal in term time, or by order of the chancellor in vacation, if by such interlocutory decree money was to be paid, or the possession of property to be changed, or the chancellor should think it necessary to settle the principles of the case. Rev. Code, 93. These were the only modes of taking cases from the superior court of chancery to the supreme court; the writ of error was nowhere given. By the act of 1830, (H. & H. Dig. 540,) writs of error were demandable as a matter of right; not, however, to operate as a supersedeas without the order of a judge. The change effected by this law was confined to a single point: instead of applying to a judge, the party obtained his writ from the clerk on filing a copy of the record. By an act of December of the same year, (1830,) the clerks of the circuit courts and courts of chancery were authorized to issue writs of error. By the act of 1837, a party to “ any judgment or decree rendered in any court in this *310 state ” was authorized to apply to the clerk of the court where the judgment was rendered for a writ of error and supersedeas, on giving bond, &c. H. & H. Dig. 541. This is the last act; and when we keep in view the preceding laws, its great object was undoubtedly to enable a party to obtain a writ of error and supersedeas by application to the clerk, instead of being compelled to apply for a judge’s- order. It ought not to be construed as enlarging the previous law by extending the application of the writ of error to judgments other than final. If the legislature desired so to extend the law, terms more definite would have been used. The terms “judgment” and “decree ” mean the final disposition of a cause, unless the meaning be restricted by appropriate technical language, and so we must understand the legislature to have used them. Their object was, not to give the writ of error in new cases, but to make it obtainable in a more convenient mode.
The case of Heckingbottom v. Shell, 3 S. & M. 588, has been cited. The section of the statute, which was there said to give the writ of error from an interlocutory decree, is the one which gives the appeal. The distinction was evidently overlooked, and the decision was right on the point which was before the court.
We are of opinion, therefore, that a writ of error does not lie to reverse an interlocutory decree, and we have said this much in order to settle the practice in future cases. In this case, however, we think the decree is really final; at least, it is so in most of its features. The objects of the bill are to enforce a specific performance of a contract, by which the complainant claimed a lien on fifty sections of land, and for the recovery of a certain amount of money for expenses and advances made in consummating the purchase of the land. The fund was placed in the hands of a receiver; an account was taken of the money due, and a report made. By this decree the report of the commissioner was confirmed, and the receiver ordered to pay over the money. The court decided that the complainant was entitled to the relief prayed. A commissioner was appointed, who was directed to sell all the land to which title had been per *311 fected. A decree was also made for costs ; nothing remained to be done but to’ distribute the fund, or, in other words, to execute the decree. The means which may be necessary to carry a decree into execution do not change its character.
Motion overruled.